saw fit, in the discharge of the grave and responsible duty imposed upon it by the act, to receive affidavits, and to act upon them alone, although the deponents are described as residents of the city of Louisville, where the court was held. It may well be that these witnesses were credible persons, able, from their own knowledge, to attest to all the facts requisite fully to warrant the decisions of the court, and that a careful cross-examination would have elicited no other facts favorable to the petitioner; but conceding that the evidence before the court might lawfully be held by it to constitute the "satisfactory proof" required by the act, the opposite course of procedure would, to say the least, have been more consonant with the established, and, as I had supposed, universally recognized principles of enlightened jurisprudence. I am, therefore, also of opinion that it is my duty to apply to this enactment the same rule of construction that is applicable to penal statutes. "It was," says Professor Christian, "one of the laws of the twelve tables of Rome, that whenever there was a question between liberty and slavery, the presumption should be on the side of liberty. This excellent principle our law has adopted, in the construction of penal statutes; for whenever any ambiguity arises in a statute, introducing a new penalty or punishment, the decision shall be on the side of lenity and mercy; or in favor of natural right and liberty; or, in other words, the decision shall be according to the strict letter in favor of the subject. And though the judges, in such cases, may frequently raise and solve difficulties contrary to the intention of the legislature, yet no further inconvenience can result, than that the law remains as it was before the statute. And it is more consonant to principles of liberty that the judge should acquit whom the legislator intended to punish, than that he should punish whom the legislator intended to discharge with impunity." 1 Bl. Comm. 88, note 19.

The result of this examination then is that, though the evidence on which alone the commissioner founded his adjudication would have been sufficient and conclusive in a case arising after the passage of the act, it was wholly inapplicable to a case like the present, arising before the passage of the act. In other words, as appears on the face of the certificate itself, the adjudication was made without evidence, and the only question is whether this great error, arising, I have no doubt, from inadvertence, can be corrected on habeas corpus. I think it may, and that it is my duty to do it. If, as has been said, "A good warrant is a good cause of detention," the converse of the proposition is not less true. I shall accordingly allow the writ, but it must be made returnable before me at the court-house, in Buffalo, at two o'clock p. m., to-morrow.

## Case No. 3,614.

### In re DAVIS et al.

[1 N. B. R. 120;[1] Bankr. Reg. Supp. 26; 7 Am. Law Reg. (N. S.) 30; 6 Int. Rev. Rec. 149; 15 Pittsb. Leg. J. 103.]

District Court, N. D. Ohio. 1867.

BANKRUPTCY—ELECTION OF ASSIGNEE — SECURED CREDITORS.

A creditor of a bankrupt holding a claim wholly or partially secured, may prove the same in bankruptcy, but cannot vote for assignee.

[Cited in Re Hunt, Case No. 6,884.]

[On certificate of register in bankruptcy.]

The question arose in this case before the register whether a creditor holding a claim fully or partially secured should be allowed to vote for an assignee. The question was certified to Judge SHERMAN, as follows, by Myron R. Keith, one of the registers of said court in bankruptcy:

"In the course of proceedings in said matter before me, the following questions arose pertinent to said proceedings, and were stated and agreed to by the counsel for the opposing parties, to wit: J. M. Jones, who appears for the bankrupt, and Payne & Wade, who appear for the creditors of said bankrupt. The facts are: A. C. Gardner, a creditor of said bankrupt, has proved his claim before the register, as a claim secured by mortgage on real estate, and the question arising is this: Under the provisions of the bankrupt act [of 1867 (14 Stat. 522)], should a creditor, holding a claim fully or partially secured, be allowed to vote at the first meeting of creditors in the election of an assignee? Section 13 provides that the creditors shall, at the first meeting held after due notice from the messenger, in the presence of a register designated by the court, choose one or more assignees of the estate of the debtor, the choice to be made by the greater part in value and in number of the creditors who have proved their debts. Section 23 provides that the court shall allow all debts duly proved, and shall cause a list thereof to be made and duly certified by one of the registers. Section 20 provides that when a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt after deducting the value of such property to be ascertained by agreement between him and the assignee or by a sale thereof to be made in such manner as the court shall direct. Section 13, above referred to, allows all creditors who have proved their debts to participate in the choice of an assignee. The certified list of creditors required by section 23, is for the purpose of spreading upon the record a statement of the names of all admitted as cred-

---

[1] [Reprinted from 1 N. B. R. 120, by permission.]

itors, and the amount due to each. Section 20, in my opinion, so far as voting for assignee is concerned, limits the creditors to those who are not secured, for it provides that creditors holding security shall be admitted as creditors only for the balance of their debts, after deducting the value of the security, and that value can only be determined by agreement between him and the assignee, or by sale of the property which cannot be agreed on between them, or ascertained by sale until after the assignee is chosen. I am therefore of the opinion that a creditor holding security, although he has proved his debt as provided in the 22d section of the bankrupt act, cannot vote in the election of assignee. And the said parties requested that the same should be certified to the judge for his opinion thereon."

SHERMAN, District Judge. I concur with the register in the opinion by him given, on the question above stated, and approve the same.

## Case No. 3,615.

### In re DAVIS.

[3 Ben. 482;[1] 3 N. B. R. 339 (Quarto, 89).]

District Court, S. D. New York. Nov. Term, 1869.

INVOLUNTARY BANKRUPTCY — ARREST ON MESNE PROCESS—CONSTRUCTION OF STATUTE —FRAUDULENT SUSPENSION OF PAYMENT OF COMMERCIAL PAPER.

1. A statute must be so construed, if possible, without doing violence to language, as to give force and meaning and effect to every part of it.

2. A debtor was arrested on August 24th, 1869, under an order of arrest issued out of the superior court of the city of New York, in an action founded on a promissory note for more than $100. He immediately gave bail and was not lodged in jail. The order of arrest remained in force at the time of the filing of a petition in involuntary bankruptcy against him, on September 20th, 1869: Held, that, as the debtor was not actually imprisoned for more than seven days on the order of arrest, he was not liable to be adjudged a bankrupt, under the 39th section of the bankruptcy act [of 1867 (14 Stat. 536)], by reason of what occurred under the order of arrest.

3. Proof, that a merchant has suspended payment of commercial paper and has not resumed payment of it within a period of fourteen days, is not sufficient to authorize an adjudication of bankruptcy against him under the 39th section of the bankruptcy act. The creditor must show that the stoppage or suspension was fraudulent.

[Cited in Baldwin v. Wilder, Case No. 806; Re Hercules Mut. Life Assur. Soc., Id. 6,-402.]

This was a hearing on a petition for involuntary bankruptcy before the court without a jury. The first act of bankruptcy alleged in the petition, which was sworn to on the 17th of September, 1869, and filed on the 20th of September, 1869, was, that the debtor [John Davis] "has been arrested and held in custody under and by virtue of mesne pro-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

cess issued out of the superior court of the city of New York in the state of New York, within which the debtor has property, founded upon a demand in its nature provable against the bankrupt's estate, under said act, and for a sum exceeding one hundred dollars, and that such process is remaining in force and not discharged by payment, or in any other manner provided by the laws of such state applicable thereto, for the period of seven days." The proof showed, that the debtor was, on the 24th of August, 1869, at the city of New York, in which city he then resided, arrested and held in custody by the sheriff of the city and county of New York, under an order of arrest issued out of the superior court of the city of New York; that the debtor, on his arrest, immediately gave bail, and was not lodged in jail, and was discharged from close custody by the sheriff; that the order of arrest was issued in a civil action, founded on a promissory note for a sum exceeding one hundred dollars, made by the debtor, and which was a demand in its nature provable against the bankrupt's estate under the bankruptcy act; and that the said order of arrest, at the time of making oath to said petition, still remained in force and had not been discharged by payment, or in any other manner provided by the law of the state of New York applicable thereto. The second act of bankruptcy alleged was, that the debtor, "on the 24th day of August, 1869, being a merchant or trader, has fraudulently stopped and suspended payment of his commercial paper and has not resumed within a period of fourteen days, to wit, a certain promissory note," specifying its particulars.

Hawes & Wardell, for creditor.
Morrison, Lauterbach & Spingarn, for debtor.

BLATCHFORD, District Judge. The 39th section of the bankruptcy act specifies, as an act of bankruptcy, that the debtor "has been arrested and held in custody under or by virtue of mesne process or execution, issued out of any court of any state, district or territory within which such debtor resides or has property, founded upon a demand in its nature provable against a bankrupt's estate under this act, and for a sum exceeding one hundred dollars, and such process is remaining in force and not discharged by payment, or in any other manner provided by the law of such state, district or territory applicable thereto, for a period of seven days." The same section, in the clause immediately following the one just cited, specifies, as an act of bankruptcy, that the debtor "has been actually imprisoned for more than seven days, in a civil action, founded on contract, for the sum of one hundred dollars or upward." The order of arrest in this case was issued in a civil action, founded on contract, for a sum exceeding one hundred dollars. It was mesne process issued out of a court of the state in